**UNITED STATES of America**

v.

**Belmont KERESTY and Thomas Earl Phillips.**

**Crim. No. 70–108.**

United States District Court,
W. D. Pennsylvania.

Feb. 19, 1971.

Blair A. Griffith, First Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

H. David Rothman, Pittsburgh, Pa., for defendants.

## OPINION

ROSENBERG, District Judge.

This matter is presently before me on motions filed by the defendant, Thomas Earl Phillips, to dismiss the indictment and for severance.

The action is filed against two defendants, Belmont Keresty and Thomas Earl Phillips. The indictment contains three counts, the first of which is directed against the co-defendant Keresty. The second count of the indictment charges both defendants with employing extortionate means to collect a debt by threatening the use of violence and other criminal means to cause harm to the person, reputation and property of said debtor and others. The third count of the indictment charges both defendants with violations of the so-called Travel Act and alleges that the defendants moved in interstate commerce for the purpose of committing extortion in violation of the Pennsylvania law.

In support of his motion to dismiss the indictment Phillips contends that Chapter 42 of Title 18 United States Code, which is concerned with the extortionate credit transactions is unconstitutional as beyond the power of Congress, and that 18 U.S.C. § 1952 (Interstate and foreign travel or transportation in aid of racketeering enterprises) as charged in count three of the indictment is an unconstitutional exercise of congressional power. Phillips argues that charging him with violation of the Extortionate Extension of Credit Act and travel in interstate commerce for the purpose of violating a state statute, here the crime of extortion, constitutes double jeopardy.

We take the narrative from a Bill of Particulars and a supplemental Bill of Particulars as filed by the Government in the case. These bills disclose that on or about August 18, 1969 Capo (the alleged victim of the extortion acts) and defendant Keresty entered into a dice game; that the following day Keresty visited Capo and asked for $3,000 in payment of the gambling loss; that the following day Keresty and Phillips visited Capo and that Phillips flashed a switch blade knife and asked Capo whether or not his wife and children were worth anything to him; that Capo then made a partial payment; that early in September the defendants again visited Capo and informed him of general impatience in awaiting payment; that Capo made additional payments with checks but then stopped payment on the checks; that Keresty again threatened Capo's life, and that Capo then wrote a series of checks which he delivered to Phillips who was to further negotiate the checks; that Phillips traveled from Ohio to Pennsylvania to perform the acts described above, and that the allegations contained in the indictment that Phillips traveled from Illinois was based on a statement he had made. It was also revealed on or about September 5, 1969 that Keresty traveled from Pennsylvania to Ohio.

■ The primary objection which Phillips raises to the Extortionate Extension of Credit Act is that the Act does not require proof of any connection between the prohibited conduct and either interstate commerce or federal bankruptcy provisions.[1] This Act, a

---

1. It was stated in the Congressional Findings and Declaration of Purpose, Section 201 of Pub.L. 90-321 that as a result of its findings " * * * Congress

portion of Title II of the Consumer Credit Protection Act of 1968, is codified in Title 18 of the United States Code in sections 891–896. Thus, in essence, Phillips contends that the Congress has extended its lawmaking power and legislated on a matter which may be purely intrastate in nature.

"* * * the power of Congress to promote interstate commerce also includes the power to regulate the local incidents thereof, including local activities in both the State of origin and destination, which might have a substantial and harmful effect upon that commerce." Heart of Atlanta Motel v. United States, 379 U.S. 241, 258, 85 S.Ct. 348, 358, 13 L.Ed.2d 258 (1964).

While our Court of Appeals for the Third Circuit has not been called upon to rule on the constitutionality of this Act, in reliance on the commerce clause of the Constitution,[2] the provisions of Title 18, United States Code have been sustained.[3] United States v. Fiore, 434 F.2d 966 (C.A.1, Dec. 4, 1970); United States v. Perez, 426 F.2d 1073, 1078, C. A.2, 1970, cert. granted 400 U.S. 915, 91 S.Ct. 175, 27 L.Ed.2d 154 (1970), where it was stated that "So long as a class of intrastate transactions considered as a whole has a substantial effect on interstate commerce, Congress can regulate a particular intrastate transaction in the class even though in that instance the effect on interstate commerce is minimal or non-existent." See also, United States v. Curcio, 310 F.Supp. 351 (D.C.

Conn.1970); United States v. Calegro de Lutro, 309 F.Supp. 462 (S.D.N.Y.1970). "* * * although the court in Perez did not reach the question, the courts in each of the other three cases also sustained § 894 under the Bankruptcy Clause."[4] United States v. Fiore, supra, at page 969.[5]

Phillips contends that the provisions of 18 U.S.C. § 1952 which make interstate travel in aid of racketeering endeavors a federal offense, are unconstitutional. This argument was rejected in United States v. Barrow, 363 F.2d 62, C.A.3, 1966, cert. den. 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541 (1967). See also Marshall v. United States, 355 F.2d 999, C.A.9, 1966, cert. den. 385 U.S. 815, 87 S.Ct. 34, 17 L.Ed.2d 54 (1966), rehearing denied 385 U.S. 964, 87 S.Ct. 388, 17 L.Ed.2d 309 (1966).

Phillips also argues that the Pennsylvania statute relating to blackmail upon which the charges in count three of the indictment are premised does not relate to extortion and is vague and over broad. It is provided in 18 U.S.C. § 1952 that "Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce * * * with intent to * * * (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity * * *" shall be guilty of an offense. Subsection (b) of this section defines amongst those activities deemed "unlawful ac-

determines that the provisions of chapter 42 of title 18 of the United States Code are necessary and proper for the purpose of carrying into execution the powers of Congress to regulate commerce and to establish uniform and effective laws on the subject of bankruptcy."

2. United States Constitution, Article 1, Section 8, Clause 3.

3. Amongst the Congressional findings were that "Extortionate credit transactions are carried on to a substantial extent in interstate and foreign commerce and through the means and instrumentalities of such commerce. Even where extortionate credit transactions are purely in-

trastate in character, they nevertheless directly affect interstate and foreign commerce."

4. United States Constitution, Article 1, Section 8, Clause 4.

5. Another Congressional finding was that "Extortionate credit transactions directly impair the effectiveness and frustrate the purpose of the law enacted by Congress on the subject of bankruptcies." As the Court in Fiore, supra, expressly found, individuals who are normally subject to extortionate transactions are persons whose financial situation is already so precarious that bankruptcy is always a very real possibility.

tivity" "* * * extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States." It is through this provision that the ambit of state law is called into question.

In United States v. Nardello, 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969) the Court reviewed the relevant Pennsylvania statute, Section 801 of the Act of June 24, 1939, P.L. 872, 18 P.S. § 4801, and found that its provisions as they related to extortionate transactions were clearly within the scope of 18 U.S.C. § 1952. While the Supreme Court did not determine the constitutionality of the Pennsylvania statute, Phillips must recognize that "18 U.S.C. § 1952 charges a Federal crime, and Federal courts are required to consider every element of the crime and every issue raised under each element. The law involved is Federal law, and all issues raised thereunder become Federal issues. If necessary to the resolution of a § 1952 case, a Federal court may interpret state law, but it does so as one step in the process of properly interpreting a Federal criminal statute. * * *" United States v. D'Amato, 436 F.2d 52 (C.A.3, November 25, 1970), page 54. If defendant Phillips seeks to challenge the constitutionality of a state statute, there are proper ways in which this matter can be raised.

■ The defendant further alleges that the charges contained in counts two and three of the indictment constitute double jeopardy. The law is that where the offenses involved are not the same, the defense of double jeopardy cannot be validly raised. United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). "Offenses are not the same

'for purposes of the double jeopardy' clause of the 5th Amendment unless the evidence required to support conviction on one of the indictments would have been sufficient to warrant conviction on the other." United States v. American Oil Company, 296 F.Supp. 538, 540 (D.C. N.J.1969) and cases cited therein. Accordingly, defendant Phillips' motion to dismiss the indictment will be denied.

■ The defendant Phillips has also presented a motion for severance alleging that the possible guilt of his co-defendant and his co-defendant's prior criminal record may create such prejudice as to prevent a fair trial. Granting such a motion is a matter for the sole discretion of the trial court. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); United States v. Lipowitz, 407 F.2d 597, C.A.3, 1969, cert. den. Smith v. United States, 395 U.S. 946, 89 S.Ct. 2026, 23 L.Ed.2d 466 (1969). The burden of proving the need for separate trials rests solely on the movant. Higgins v. United States, 130 U.S.App.D.C. 331, 401 F.2d 396, (1968). "Where proof of the charges against the defendants is dependent upon the same evidence * * *, severance should not be granted except for the 'most cogent reasons.' United States v. Kahn, [381 F.2d 824 (7 Cir. 1967)]." United States v. Johnson, 298 F.Supp. 58, 62 (N.D.Ill., 1969).

■ In the present case, defendant Phillips has failed to demonstrate any "cogent" reason why the severance should be allowed since there are proper safeguards which the trial court will be able to invoke to prevent any possible prejudice to the defendant Phillips. Accordingly, the motion for severance will also be denied.