UNITED STATES, Appellee,

v.

Larry J. DAVIS, Jr., Sergeant, U.S. Marine Corps, Appellant.

No. 97–0790.
Crim.App. No. 96–0319.

U.S. Court of Appeals for the Armed Forces.

Argued Oct. 7, 1998.

Decided June 24, 1999.

Crawford, J., filed opinion concurring in the result.

GIERKE, J., delivered the opinion of the Court, in which COX, C.J., and SULLIVAN and EFFRON, JJ., joined. CRAWFORD, J., filed an opinion concurring in the result.

For Appellant: *Major Stephen D. Chace*, USMC (argued); *Lieutenant Estela I. Velez*, JAGC, USNR (on brief).

For Appellee: *Major Clark R. Fleming*, USMC (argued); *Colonel Charles Wm. Dorman*, USMC, *Colonel K.M. Sandkuhler*, USMC, and *Commander David H. Myers*, JAGC, USN (on brief).

Judge GIERKE delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two unauthorized absences, wrongful possession of drug paraphernalia contrary to a general regulation, wrongful use of marijuana, wrongful use of cocaine (2 specifications), and making and uttering 37 bad checks, in violation of Articles 86, 92, 112a, and 123a, Uniform Code of Military Justice, 10 USC §§ 886, 892, 912a, and 923a, respectively. The adjudged and approved sentence provides for a bad-conduct discharge, confinement for one year, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 46 MJ 551 (1997).

This Court granted review of the following issue:

WHETHER THE LOWER COURT ERRED WHEN IT DETERMINED THAT THE MILITARY JUDGE HAD NOT ERRED IN ACCEPTING APPELLANT'S PRETRIAL AGREEMENT WHERE THE PRETRIAL AGREEMENT CONTAINED A PROHIBITED AND UNENFORCEABLE PROVISION TO "CALL NO WITNESSES AND PRESENT NO EVIDENCE ON MY BEHALF DURING THE CASE ON THE MERITS," THEREBY VIOLATING RULE FOR COURTS-MARTIAL 705(c)(1)(B).

For the reasons set out below, we affirm.

### Factual Background

Before trial, appellant negotiated a pretrial agreement with the convening authority that obligated appellant to request trial by military judge alone, enter into a confessional stipulation, "call no witnesses and present no evidence on my behalf during the case on the merits[,]" and "complete an in-patient drug rehabilitation program ... at the earliest time practicable." The convening authority agreed to suspend all confinement in excess of 12 months for 12 months from the date of his action. The agreement permitted all punishments to be approved as adjudged.

After appellant entered pleas of not guilty, both sides waived opening statements. The military judge announced that he had received a copy of the proposed stipulation of fact, observed that it appeared to be a confessional stipulation, and announced his intention to conduct the inquiry required by *United States v. Bertelson*, 3 MJ 314 (CMA 1977).

The military judge then asked appellant if he signed the stipulation, discussed it with his defense counsel, voluntarily entered into the stipulation, believed everything recited in the stipulation was true, and wished to admit that it was true. Appellant responded in the affirmative to each inquiry. The military judge (MJ) explained the effect of a confessional stipulation as follows:

This stipulation amounts to a confession of the elements of all of the offenses to which you pled not guilty. There is I believe only a couple of exceptions. It seems to me that the stipulation does not include anything about what the SECNAV [Secretary of the Navy] Instruction prohibits, that is, the Article 92 offense; but I would presume that that wouldn't take much effort by the Government to introduce evidence of the copy of that instruction and it does not admit the wrongfulness of the use of cocaine and marijuana; but again, that can be presumed by the stipulation that you have entered into and it does not admit the intent to defraud which is a part of the Article 123a, bad-checks offense. Nonetheless, that can also be presumed simply by the facts that you've entered into it. Do you understand that?

[Accused] (ACC): Yes, sir.

MJ: So in other words, based just on the stipulation and perhaps the introduction of a copy of the SECNAV Instruction as to one offense, the Government [sic] could find you guilty of all the offenses based only on the stipulation of fact. Do you understand that?

ACC: Yes, sir.

The military judge then advised appellant of the elements of each offense charged and asked if he realized that the confessional stipulation "practically admits" each element of each offense charged. In each case, appellant responded, "Yes, sir." The military judge then had the following dialogue with appellant:

MJ: You have pleaded not guilty to all offenses. By pleading not guilty, you have placed the burden on the prosecution to prove its case against you, if it can, by legal and competent evidence beyond a reasonable doubt. By stipulation to all of the elements of the offenses, you relieve the prosecution of its burden of proving these elements by legal and competent evidence. If you do not agree to this stipulation, then the stipulation could not be used and the prosecution would have to prove these elements if it could. Do you understand that?

ACC: Yes, sir.

MJ: Is everything in the stipulation true?

ACC: Yes, sir.

MJ: How do you know that it's true?

ACC: I read it myself, sir, and I agree with what is stipulated in the statement.

MJ: Most of the facts were personally known to you?

ACC: Yes, sir.

MJ: And perhaps [as to] some of the others, that came about by reviewing the evidence with your attorney?

ACC: Yes, sir, and discussion with my attorney.

MJ: And you're absolutely convinced that there is a factual basis for all the stipulated matters?

ACC: Yes, sir.

MJ: Has anyone forced or threatened you to enter into the stipulation?

ACC: In no way, sir.

MJ: Has anyone made any promises or agreements with you in exchange for your entering into this stipulation other than the pretrial agreement itself?

ACC: No, sir.

Thereafter, the military judge explained each term of the pretrial agreement, ensured that appellant was satisfied with the advice of his defense counsel and that appellant understood each term, agreed with the military judge's interpretation of each term, and was entering the pretrial agreement voluntarily.

With the concurrence of trial counsel and defense counsel, the military judge advised appellant that the maximum authorized punishment for the offenses was a dishonorable discharge, confinement for 19 years and 7 months, total forfeitures, a fine, and reduction to pay grade E–1, "as well as other lesser penalties." The military judge asked appellant, "Do you understand that since this stipulation of fact practically admits [sic] to a plea of guilty, you could lawfully be sentenced to this maximum punishment?" Appellant responded, "Yes, sir."

The military judge then accepted the confessional stipulation in evidence and ruled that "the pretrial agreement is in accordance with appellate case law" and "not contrary to public policy or my own notions of fairness."

After presenting evidence of the SECNAV Instruction allegedly violated, the prosecution rested. The military judge then conducted the following inquiry:

MJ: Sergeant Davis, if it weren't for the agreement which you yourself and your counsel proposed, you would have the absolute right to present evidence, to present witnesses and to testify under oath as to these matters. Do you understand that?

ACC: Yes, sir.

MJ: Do you specifically waive all of those?

ACC: Yes, sir.

Following this inquiry, defense counsel made the following closing argument:

Sir, we would simply address the issue of intent to defraud with respect to the charge under Article 123a. We would submit that while the Government has presented facts which would permit the military judge to make an inference as to intent to defraud, we would argue that those facts in combination with the charge regarding cocaine use raised enough doubt as to amount to reasonable doubt in this Court's mind as to intent to defraud. We would ask the judge not to make the inference of that intent and render a finding of not guilty. Thank you.

Immediately after defense counsel's argument, the military judge found appellant guilty of all Charges and specifications.

### Discussion

Appellant asserts that the "pretrial agreement turned his ... court-martial into an empty ritual"; deprived him of due process in violation of RCM 705(c)(1)(B), Manual for Courts–Martial, United States (1995 ed.) [1]; circumvented Article 45(a), UCMJ, 10 USC § 845(a), RCM 910(c), and *United States v. Care*, 18 USCMA 535, 40 CMR 247 (1969); and compromised the integrity of the court-martial. The Government argues that RCM 705(c)(1)(B) specifically contemplates pretrial agreements providing for confessional stipu-

---

1. This version was in effect at the time of trial.   The current version is unchanged.

lations instead of guilty pleas and that the integrity of the court-martial was not compromised in this case. The Government points out that the extensive inquiry by the military judge ensured that there was no government overreaching and that appellant freely and voluntarily agreed to all the terms of the pretrial agreement.

■ A fundamental principle underlying this Court's jurisprudence on pretrial agreements is that "the agreement cannot transform the trial into an empty ritual." *United States v. Allen*, 8 USCMA 504, 507, 25 CMR 8, 11 (1957). This principle and numerous court decisions applying it have been incorporated in RCM 705(c)(1)(B), which provides as follows:

A term or condition in a pretrial agreement shall not be enforced if it deprives the accused of: the right to counsel; the right to due process; the right to challenge the jurisdiction of the court-martial; the right to a speedy trial; the right to complete sentencing proceedings; the complete and effective exercise of post-trial and appellate rights.

*See* Drafters' Analysis of RCM 705(c)(1)(B), Manual, *supra* at A21–38. RCM 705(c)(2)(A) specifically authorizes the pretrial agreement to contain "[a] promise to enter into a stipulation of fact concerning offenses to which a plea of guilty *or as to which a confessional stipulation will be entered*." (Emphasis added.)

■ When an accused pleads guilty, RCM 910(c) requires the military judge to "address the accused personally and inform the accused of, and determine that the accused understands," a number of consequences, including the following:

(1) The nature of the offense to which the plea is offered, the mandatory minimum penalty, if any, provided by law, and the maximum possible penalty provided by law;

\* \* \*

(3) That the accused has the right to plead not guilty or to persist in that plea if already made, and that the accused has the right to be tried by a court-martial, and that at such trial the accused has the right to confront and cross-examine witnesses against the accused, and the right against self-incrimination;

(4) That if the accused pleads guilty, there will not be a trial of any kind as to those offenses to which the accused has so pleaded, so that by pleading guilty the accused waives the rights described in subsection (c)(3) of this Rule[.]

(Provisions of RCM 910(c) not relevant to this case omitted.) RCM 910(c) incorporates the inquiry mandated by this Court in *United States v. Care, supra.* It implements Article 45(a), which requires a military judge to reject a guilty plea if the accused "makes an irregular pleading, or after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect."

RCM 811(c) requires a military judge to "be satisfied that the parties consent to" a stipulation before accepting it in evidence. The non-binding Discussion to RCM 811(c) provides further guidance as follows:

If the stipulation practically amounts to a confession to an offense to which a not guilty plea is outstanding, it may not be accepted unless the military judge ascertains: (A) from the accused that the accused understands the right not to stipulate and that the stipulation will not be accepted without the accused's consent; that the accused understands the contents and effect of the stipulation; that a factual basis exists for the stipulation; and that the accused, after consulting with counsel, consents to the stipulation; and (B) from the accused and counsel for each party whether there are any agreements between the parties in connection with the stipulation, and if so, what the terms of such agreements are.

This guidance incorporates the inquiry mandated by this Court in *Bertelson*, 3 MJ at 316–17. *Bertelson* permitted a confessional stipulation in spite of a prohibition against confessional stipulations in paragraph 154*b*(1), Manual for Courts-Martial, United

States, 1969 (Revised Edition),[2] then in effect. This prohibition was removed from the Manual for Courts–Martial, United States, 1984, and all subsequent revisions. *See* Drafters' Analysis of RCM 811(c), Manual, *supra* at A21–48 (1995 ed.).[3]

*Bertelson* also held, "Should this plea bargain inquiry reveal the existence of an agreement not to raise defenses or motions, the confessional stipulation will be rejected as inconsistent with Article 45(a)." The basis for this holding was explained as follows:

> To allow the Government to enter into pretrial agreements conditioned upon a stipulation (as opposed to a plea) of guilt coupled with a promise not to raise any defense or motion would utterly defeat the congressional purpose behind Article 45(a), for it would allow the Government to avoid the hurdles Congress imposed in Article 45(a) while nevertheless reaping benefits equivalent to a guilty plea.

3 MJ at 317.

Applying the foregoing body of law to the facts of this case, we conclude that the *Bertelson* prohibition against accepting a confessional stipulation as part of a pretrial agreement promising not to raise any defense was violated. We hold, however, that appellant was not deprived of due process under the specific facts of this case.

Like the court below, we are at a loss to discern any tactical advantage gained by the plea of not guilty. The record does not reflect any reason for the unusual plea, such as an unwillingness of appellant to admit that his use of marijuana was "wrongful." Because appellant has not challenged the adequacy of his representation, we have no explanation from his defense counsel. *See United States v. Lewis*, 42 MJ 1, 6 (1995) (defense counsel not compelled to explain actions in absence of allegation of ineffectiveness and judicial determination that evidence, if unrebutted, would overcome presumption of competence).

Notwithstanding the *Bertelson* violation, we hold that appellant is not entitled to relief. The basis for the prohibition against coupling a confessional stipulation and a promise not to present evidence is that it circumvents Article 45(a). In this case the military judge conducted all the inquiries and secured all the responses required by Article 45(a) and RCM 910(a). Accordingly, we conclude that appellant's right to due process was not infringed.

Although appellant asserts that the procedures employed in this case circumvented the requirement that the military judge ensure that he understand that he waived his right against self-incrimination, to a trial of the facts, and to confront the witnesses against him, the record does not support his assertions. The record reflects that the military judge informed appellant that the confessional stipulation admitted all the elements of the offenses, except the wrongfulness of his use of marijuana and the intent to defraud in the bad-check offenses. He informed appellant that he could be convicted of all offenses based almost entirely on the stipulation. He obtained appellant's assurance that there was a factual basis for all stipulated matters. He ensured that appellant understood that the stipulation of fact virtually amounted to a plea of guilty. He determined that appellant freely agreed to the pretrial agreement and the stipulation. After the prosecution rested its case, the judge informed appellant that, but for the agreement, he would be entitled to present evidence on his behalf, and appellant indicated that he understood. On this record, we are satisfied that appellant understood that he had incriminated himself by his agreement to the stipulation, that he was giving up his right to a trial on the merits, and that he was giving up his right to confront the witnesses against him.

We note that appellant has not proffered any evidence that was precluded by the pretrial agreement. The remedy for an illegal pretrial agreement is to declare its provisions unenforceable. Thus, the remedy in this

---

2. When the Military Rules of Evidence first took effect in 1980, this provision of the 1969 Manual was replaced by paragraph 54*f* (1) of that Manual (Change 3, Sept. 1, 1980).

3. *See* n. 1, *supra*.

case would be to allow appellant to present evidence in his defense, but he has proffered none.

Finally, there is no evidence that the pretrial agreement or confessional stipulation is the product of government overreaching. Appellant repeatedly assured the military judge that his actions were completely voluntary and were taken after receiving the advice of his defense counsel, whose competence is not disputed. Thus, we conclude that appellant has not been prejudiced by the procedures employed in this case. While we do not condone or encourage them, we are satisfied that no relief is warranted.

### Decision

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

CRAWFORD, Judge (concurring in the result):

This Court, in numerous cases, has indicated that substance rather than form will control. As pointed out by the majority, appellant entered a plea pursuant to a pretrial agreement. Like many defendants, when faced with the moment of truth, appellant probably could not admit the elements involved; thus, the confessional stipulation in the case. *See United States v. Penister*, 25 MJ 148, 153 (CMA 1987) (Cox, J., concurring). The defense here has not indicated what evidence it would have introduced, and has not shown prejudice, as required by *United States v. Rivera*, 46 MJ 52 (1997), and *United States v. Forester*, 48 MJ 1 (1998), in order to be entitled to relief. *See also United States v. Craig*, 48 MJ 77, 80 (1998) (the Court held that erroneous advice as to the waiver of constitutional rights was harmless); *cf. United States v. Watruba*, 35 MJ 488 (CMA 1992).

RCM 705(b)(1), Manual for Courts–Martial, United States, 1984 (1998 ed.), permits a pretrial agreement which includes "a confessional stipulation as to one or more charges and specifications." Additionally, RCM 705(c)(2)(A) permits a pretrial agreement which includes a term promising entry into a stipulation of fact. Implicit within RCM 705(b)(1) is that the defendant will call no witnesses and present no evidence to rebut what is in the stipulation, unless he or she withdraws from the stipulation.

The pretrial agreement in this case "originated" with appellant after consultation with his counsel. As part of that agreement, he "attached [a] stipulation of fact which I have read and assert to be true and accurate." In the next sentence, he indicated that he would "call no witnesses and present no evidence on my behalf during the case on the merits." Appellant was advised by the judge that he could not "be forced to enter into a stipulation."

MJ: No one can be forced to enter into a stipulation. You may do so only on a voluntary basis and on the advice of your attorney if you desire. Do you understand that?

ACC: Yes, sir.

MJ: Are you voluntarily entering into this stipulation?

ACC: Yes, sir.

MJ: I would like for you to read over to yourself all of the stipulation of fact and look up when you are finished reading it, and I'm going to ask you if everything in there is true. Go ahead and read it now and then look up when you're finished.

DC: All right, sir.

[The accused did as instructed.]

MJ: Have you had a chance to review that document once more?

ACC: Yes, sir.

MJ: Did you just talk it over with your attorney as well?

ACC: There was a question I had for him, sir.

MJ: Is there anything in there that you would like to dispute?

ACC: No, sir.

MJ: Do you believe everything in that document is absolutely true?

ACC: Yes, sir.

MJ: Do you wish to admit that it is true?

ACC: Yes, sir.

MJ: Do you have something to say, Captain Johnson?

DC: No, sir.

MJ: A stipulation of fact is an agreement between the trial counsel, the defense counsel, and yourself that everything in this document is absolutely true and if entered into evidence are uncontradicted facts for the purpose of this trial. This stipulation amounts to a confession of the elements of all of the offenses to which you pled not guilty. There is I believe only a couple of exceptions. It seems to me that the stipulation does not include anything about what the SECNAV Instruction prohibits, that is, the Article 92 offense; but I would presume that that wouldn't take much effort by the Government to introduce evidence of the copy of that instruction and it does not admit the wrongfulness of the use of cocaine and marijuana; but again, that can be presumed by the stipulation that you have entered into and it does not admit the intent to defraud which is a part of the Article 123a, bad checks offense. Nonetheless, that can also be presumed simply by the facts that you've entered into it. Do you understand that?

ACC: Yes, sir.

MJ: So in other words, based just on the stipulation and perhaps the introduction of a copy of the SECNAV Instruction as to one offense, the Government could find you guilty of all the offenses based only on the stipulation of fact. Do you understand that?

ACC: Yes, sir.

MJ: Accordingly, I must conduct an inquiry to determine if you wish to have this stipulation admitted against you.

First, you have the right not to enter into this stipulation. This stipulation will not be accepted without your consent. Do you understand that?

ACC: Yes, sir.

The judge on several occasions again advised appellant that inferences as to the missing elements could be drawn from the stipulation without the introduction of evidence. Appellant agreed, but still was willing to consent to admission of the stipulation of fact. Appellant reiterated on the record

that the agreement "originated" with him and his lawyer. Appellant could not bring himself to admit to the elements of wrongfulness or intent to defraud, blaming a "drug problem," that is, an addiction to crack cocaine. According to appellant, there were very few "waking moments" when he "was not under the influence of narcotics."

Appellant did not request a post-trial session under RCM 1102, or under our case law, to set aside the conviction based upon the inappropriate consideration of the stipulation of fact without the introduction of any evidence. *See e.g., United States v. Scaff,* 29 MJ 60 (CMA 1989); *United States v. Griffith,* 27 MJ 42 (CMA 1988). Nor did he do likewise in a post-trial submission to the convening authority. To this date, the defense has not come forward with any evidence that would contradict the stipulation. While I agree that the record could have reflected why appellant made this agreement, as in *United States v. Craig, supra,* it did not. But that should not control our analysis.

After the plea was made by appellant, the judge made an appropriate inquiry under RCM 811(c). While the majority cites RCM 811(c), the Discussion to RCM 811(c), and *United States v. Bertelson,* 3 MJ 314 (CMA 1977), it fails to clarify which portion of *Bertelson* still applies.

In *Bertelson,* the majority held that a confessional stipulation ordinarily should not be admitted unless the accused consents.

> If an accused and his lawyer, in their best judgment, think there is a benefit or advantage to be gained by entering otherwise objectionable evidence, . . . we perceive no reason why they should not be their own judges with leeway to do so.

*Id.* at 315–16. The majority also noted that "it [was] not clear whether the accused understood that his stipulation could not ordinarily be admitted." *Id.* at 316. The trial judge there had only advised the accused that he did not have to agree to the stipulation. But the Court remonstrated:

> [W]e believe the military judge [1] was required to expressly communicate to the appellant before accepting his confessional

stipulation that under the Manual it could not be accepted without his consent. . . . Further, the military judge [2] was required to apprise the accused, as he did here, that the Government has the burden of proving beyond a reasonable doubt every element of the offense and that by stipulating to material elements of the offense, the accused alleviates that burden.

*Id.*

In *Bertelson*, the Court required an inquiry similar to the one it required in *United States v. Care*, 18 USCMA 535, 40 CMR 247 (1969). As the Court stated in *Care:*

> It will be seen that the law officer [now military judge] explained that he had to determine voluntariness and providency personally and asked the accused (1) if he knew his plea subjected him to a finding of guilty without further proof; (2) if he knew he could be sentenced to the maximum sentence; (3) if he understood the meaning and effect of his plea; (4) if he knew that the burden was on the Government to prove his guilt beyond a reasonable doubt; (5) if he knew he was entitled to plead not guilty; (6) if he knew the elements of the offense; (7) if he had adequate opportunity to consult with counsel on any matters he felt necessary; (8) if he was satisfied with his counsel; (9) whether counsel advised him of the maximum punishment; (10) if the decision to negotiate a plea originated with him; (11) if his plea was given voluntarily; (12) if anyone used force or coercion to get him to enter a guilty plea; (13) if he believed it was in his best interest to plead guilty; (14) if his plea was the product of free will and a desire to confess his guilt; and (15) if he knew he could withdraw his plea. . . .

> The procedure that was followed here fell short . . . because the law officer did not personally inform the accused of the elements constituting the offense and he did not establish the factual components of the guilty plea. . . .

> \* \* \*

> [T]he record of trial . . . must reflect not only that the elements of each offense charged have been explained to the accused but also that the military trial judge . . . has questioned the accused about what he did or did not do, and what he intended (where this is pertinent), to make clear the basis for a determination by the military trial judge . . . whether the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty. . . .

> Further, the record must also demonstrate the military trial judge . . . personally addressed the accused, advised him that his plea waives his right against self-incrimination, his right to a trial of the facts by a court-martial, and his right to be confronted by the witnesses against him; and that he waives such rights by his plea.

*Id.* at 539–41, 40 CMR at 251–53.

Subsequent to *Bertelson* and *Care*, the President, pursuant to his rulemaking authority under Article 36, Uniform Code of Military Justice, 10 USC § 836, promulgated RCM 811. While "[t]he President . . . cannot overrule or diminish an Act of Congress via the promulgation of rules of procedure," the President does have the "clear authority" to rectify "[o]ur rough-and-ready rule of thumb" that sets forth how to handle confessional stipulations. *United States v. Kossman*, 38 MJ 258, 260–61 (CMA 1993). While this Court took it upon itself to ensure that innocent defendants did not plead guilty to ensure a favorable pretrial agreement, our rules have been clarified by the President.

RCM 811(c) provides that the "parties [must] consent to [the stipulation's] admission." "This consent must be manifested in some manner before the military judge may receive the stipulation, although the rule does not specify any particular form for the manifestation, as this rests within the discretion of the trial judge." Drafters' Analysis of RCM 811(c), Manual, *supra* at A21–47.

Furthermore, the Discussion to RCM 811(c) provides in part as follows:

> Ordinarily, before accepting any stipulation the military judge should inquire to ensure that the accused understands the right not to stipulate, understands the stipulation, and consents to it.

If the stipulation practically amounts to a confession to an offense to which a not guilty plea is outstanding, it may not be accepted unless the military judge ascertains: (A) from the accused that the accused understands the right not to stipulate and that the stipulation will not be accepted without the accused's consent; that the accused understands the contents and effect of the stipulation; that a factual basis exists for the stipulation; and that the accused, after consulting with counsel, consents to the stipulation; and (B) from the accused and counsel for each party whether there are any agreements between the parties in connection with the stipulation, and, if so, what the terms of such agreements are.

This analysis is much clearer than just indicating that *Bertelson* applies. We know from the past that some of the language in *Bertelson*, and certainly some of the language in *Care*, would be inappropriate. *Wa-*

*truba,* 35 MJ at 488. The majority is apparently adopting some of the language from the Discussion to RCM 811(c) and some of the requirements from *Bertelson;* but what it adopts from each is unclear.

In any event, reading the record in context, appellant was not contesting the facts, but he could not admit to two critical elements. This is not an instance where there were other facts from which appellant could raise a defense. *Cf. Bertelson,* 3 MJ at 317.

There appears to be a consensus, albeit in varying degrees, among the federal circuits regarding the way they treat confessional stipulations, defined as stipulations amounting to *de facto* guilty pleas.[1] No circuit seems willing to equate a confessional stipulation with a guilty plea. However, most circuits that have examined this topic do afford some constitutional protections to confessional stipulations. In particular, they require that the trial judge inquire into

---

1. *United States v. Mejia–Alarcon,* 995 F.2d 982, 991 (10th Cir.1993) ("Certainly, we would prefer that a district court address the defendant directly before accepting a stipulation that goes to one or more elements of the Government's case in order to ascertain whether the defendant understood the stipulation and entered it voluntarily, and to determine whether the stipulation has a factual basis.... However, we have held that a district court's failure to do so does not constitute plain error, nor does it deprive the defendant of due process, at least where the defendant was present in court and represented by counsel at the time of the stipulation."); *United States v. Lyons,* 898 F.2d 210, 215 (1st Cir.), *cert. denied,* 498 U.S. 920, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990) (While declining to extend Rule 11 to confessional stipulations, the court does look to see if the trial judge "took 'special pains to satisfy himself' that the waiver was knowing and voluntary to impress upon the defendant the significance of the choice to proceed by stipulation."); *United States v. Schuster,* 734 F.2d 424 (9th Cir.1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985) (Admonition by the trial judge of defendant's right to confrontation is required by Rule 11 only for pleas of guilty or *nolo contendere,* not for stipulations tantamount to a guilty plea.); *United States v. Robertson,* 698 F.2d 703, 710 (5th Cir.1983) (Based heavily on the facts of this case, "[w]e hold that a plea of not guilty by a defendant represented by counsel, even coupled with an inculpatory stipulation, is a plea of not guilty, and absent evidence of any prosecutorial overreaching, the defendant is not entitled to the protections of Rule 11."); *Wiley v. Sowders,* 669 F.2d 386, 389 (6th Cir.1982) (per curiam) (*Wiley II*) (While "an on-the-record inquiry by the trial court to determine whether a criminal defendant has consented to an admission of guilt during closing arguments represents the preferred practice ... we did not hold in *Wiley [I],* and we do not now hold, that due process requires such a practice."); *United States v. Wray,* 608 F.2d 722, 724 (8th Cir.1979), *cert. denied,* 444 U.S. 1048, 100 S.Ct. 739, 62 L.Ed.2d 735 (1980) (A stipulation is "the equivalent of a formal bench adjudication ... [in which a judge] applies the applicable law to determine whether the facts before him constitute a criminal offense," and not the functional equivalent of a plea of guilty or *nolo contendere.*); *United States v. Garcia,* 450 F.2d 287 (9th Cir.1971) (On the filing of a stipulation amounting to a *de facto* guilty plea, Rule 11 does not require extensive examination of the defendant.); *United States v. Dorsey,* 449 F.2d 1104, 1108 (D.C.Cir.1971) (The facts of this case do not require extending the *Brown* rule, where "appellant's case appears so weak as to suggest the equivalence of a guilty plea ... due to the facts as developed in the special officer's testimony, not to the stipulations made at the trial."); *United States v. Brown,* 428 F.2d 1100, 1103–04 (D.C.Cir.1970) (While the protections of Rule 11 do not apply where there is no explicit plea of guilty, under the facts of this case, where defendant waives trial on all issues except insanity, the judge should address the defendant personally to determine "whether the waiver is made voluntarily with understanding of the consequences of his act.").

whether the defendant entered the stipulation voluntarily and intelligently. No circuit requires the guilty plea colloquy delineated in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and codified in Fed.R.Crim.P. 11. Such a colloquy requires the additional admonishments of the rights, such as to confrontation and cross-examination of witnesses, which the defendant may give up through the stipulated trial.

The issues in this case could easily have been avoided had defense counsel stated on the record that appellant could not admit to the wrongfulness of his use of marijuana and cocaine, or the intent to defraud for the bad check offenses, but would agree to the facts in the stipulation. Further, counsel could have stated that appellant wanted the benefit of the negotiated pretrial agreement, and had no witnesses or evidence to call, but was relying solely on the stipulation of fact.

In the civilian sector, many of these issues are avoided by allowing an *Alford* plea, *see North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); but such a plea is not permitted in the military under Article 45, UCMJ, 10 USC § 845. An *Alford* plea, or a plea as in this case, eliminates the risk of the defendant lying or of a plea being made with a wink and a nod. There was nothing sinister about the plea here, although I recognize the record could be clearer. Just as we have permitted pleas in the past when the defendant could not remember the elements of the offense, *see United States v. Luebs,* 20 USCMA 475, 43 CMR 315 (1971), we also should permit a plea like the one in this case when there is no contest concerning the underlying facts.

Since *Bertelson* is based on Article 45, which in turn is taken largely from W. Winthrop, *Military Law and Precedents* 277–78 (2d ed. 1920 Reprint), Congress has the option to change Article 45 to permit *Alford*-type pleas; thus, eliminating the issue we have in this case.